IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UHURU'SEKOU KAMARA AJANI OBATAIYE,**

    Plaintiff,

v.                                                                                                Civil Action No. **3:18CV877**

**VIRGINIA DEPARTMENT OF CORRECTIONS,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Uhuru'sekou Kamara Ajani Obataiye, a Virginia inmate, currently in the custody of North Carolina, proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] Obataiye has long history of harassing and attacking his jailors with physical force and threats. These actions include a conspiracy orchestrated by Obataiye to murder various correctional officials in the Virginia Department of Corrections ("VDOC").

The action proceeds on Obataiye's Second Particularized Complaint ("Complaint," ECF No. 30).[2] In his Complaint, Obataiye names as defendants the VDOC and the following individuals employed by the VDOC: Harold W. Clarke, Keith Dawkins, R. Murphy, Joe Fannin, A.D. Robinson, and Rana Brace (collectively, "the Correctional Defendants"). Obataiye also

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to parties' submissions. The Court corrects the spelling and capitalization in the quotations from the parties' submissions. The Court omits the emphasis in the quotations from the parties' submissions.

[2] The Court twice directed Obataiye to particularize his complaint in order to correct deficiencies. On April 6, 2020, Obataiye filed his Second Particularized Complaint and by Memorandum Order entered on May 8, 2020, the Court served the Second Particularized Complaint on Defendants. On July 20, 2020, Obataitye filed another document with the Court which he labeled a Complaint ("July 20, 2020 Complaint"). Obataiye did not seek leave to amend or specify that he wished the July 20, 2020 Complaint to supplant the Second Particularized Complaint. Accordingly, the July 20, 2020 Complaint will receive no further consideration and the action will proceed solely on the Second Particularized Complaint (ECF No. 30).

names the Virginia State Police and Colonel W. Steve Flaherty as defendants. Obataiye's primary complaint is that the defendants improperly labeled him a sex offender in retaliation for his attempts to murder VDOC officials. Obataiye contends that the actions of the defendants subjected him to cruel and unusual punishment, and, *inter alia*, violated his rights to due process and equal protection. Given the lack of precision with which Obataiye states many of his claims in his Complaint, the Court declines to provide a preliminary summary of those claims against the individual defendants.

The matter is before the Court on the defendants' Motions for Summary Judgment. For the reasons set forth below, the Motions for Summary Judgment will be GRANTED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, the VDOC Defendants submitted: the affidavit of Kyle Rosch, the Interstate Compact Coordinator for the VDOC ("Rosch Aff.," ECF No. 64-1); the affidavit of R. Murphy, an Intel Officer at Red Onion State Prison ("ROSP") ("Murphy Aff.," 64-2); and, the affidavit of R. Brace ("Brace Aff.," ECF No. 64-3). Additionally, the Correctional Defendants submitted other records and material that the Court refers to by their CM/ECF designation. In support of their Motion for Summary Judgment, the Virginia State Police and Colonel W. Steve Flaherty submitted: the affidavit of Captain Matthew T. Patterson, the Division Commander of the Criminal Justice Information Services Division of the Virginia State Police ("Patterson Aff.," ECF No. 58-1), and various documents attached to that affidavit, which the Court refers to by their CM/ECF designation.

In response, Obataiye submitted his own declaration, ("Obataiye Declaration," ECF No. 62, at 9–28), and a variety of other documents that the Court refers to by their CM/ECF designation.[3]

At this stage, the Court is tasked with assessing whether Obataiye "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). The facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Summary judgment affidavits must also "set out facts that would be admissible in evidence." *Id.* Thus, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990)).

---

[3] At the bottom of his Complaint, Obataiye stated:

> I have read the foregoing Complaint and hereby verify that the matters alleged therein are true, except to those matters alleged on information and belief and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

(Compl. 11.) Such a statement fails to transform the statements in the Complaint into admissible evidence. *See Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3, *2 n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x. 270, 274 (4th Cir. 2001))); *Walker*, 11 F. App'x at 274 (citations omitted) (concluding that "verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment").

Obataiye has submitted several sworn statements that run afoul of the above restrictions. For example, Obataiye repeatedly states that he was improperly placed on the Virginia Sex Offender Registry. (Obataiye Decl. ¶¶ 46, 47.) Obataiye, however, fails to demonstrate that he has personal knowledge of this fact and the record conclusively demonstrates that it is not true.

In light of the foregoing submissions and principles, the following facts govern the Motions for Summary Judgment. The Court draws all permissible inferences in favor of Obataiye.

## II. SUMMARY OF RELEVANT FACTS

Obataiye came into the custody of the VDOC on June 15, 2005. (Rosch ¶ 4.) Obataiye had convictions for multiple crimes, including robbery, use of a firearm, abduction for pecuniary benefit and indecent exposure. (ECF No. 64-1, at 7–10.) Since his incarceration in the VDOC, Obataiye has committed well over one hundred serious institutional offenses. (*Id.* at 27–41.) In 2015, Obataiye was charged with (ECF No. 62-2, at 1–2), and eventually convicted of, charges relating to trying to have VDOC staff killed and assaulted. (Obataiye Decl. ¶ 18.)

### A. Initial Attempt to Assess Whether Obataiye Needed to Register as a Sex Offender

In February of 2017, ROSP staff received notification from the VDOC's central office to complete a Virginia State Police Form SP-236 to assess whether Obataiye was required to register as a sex offender. (Rosch Aff. ¶ 6.) This was so because the relevant VDOC Operating Procedure 735.1 provided:

> *Sex Offender and Crimes Against Minors Registration*, requires that upon intake into a VDOC facility, staff are required to research an inmate's conviction history and if the inmate has been convicted of an offense that potentially requires registration with the Virginia State Police "Sex Offender and Crimes Against Minors Registry," facility staff must complete the "Sex Offender and Crimes Against Minors Registration Form" ("SP-236 form"). For inmates that are potentially required to register, but there is no letter on file from the Virginia State Police listing the offender's registry requirement and the classification level associated with the registration; a Virginia State Police Registration Form (SP-236)

> shall be completed and submitted using the same procedure as an initial intake. Once completed, VDOC staff sends the completed SP-236 form, fingerprint card, and photograph to the VSP for further investigation and for the VSP to make a determination as to whether [an] inmate's offense(s) meets the registry requirement and the classification level associated with the registration. After the Virginia State Police makes a final decision regarding the inmate's obligation to register, the Virginia State Police will send a letter to the facility, with a copy for the offender, listing the offender's registry requirement and classification level associated with the registration. Only the VSC has the authority to add or remove individuals from the "Sex Offender and Crimes Against Minors Registry."

(*Id.* ¶ 5.) The request to complete the SP-236 Form was prompted by the fact "Obataiye had been convicted in the Norfolk Circuit Court of Abduction for Pecuniary Benefit in violation of Virginia Code § 18.2–48(i), and because the victim was a minor, the conviction fell within the potential registration offenses listed in OP 735.1 and Virginia Code § 9.1-902." (*Id.* ¶ 6.)

In March of 2017, the ROSP Intel staff were required to obtain Obataiye's fingerprints as Virginia State Police required that fingerprints be submitted along with the SP-236 Form. (Murphy Aff. ¶ 5.)

### B.  The Dispute as to What Defendant Murphy Said at Obataiye's Cell

According to Defendant Murphy, on March 3, 2017, she

> asked security staff to bring Obataiye to the Pod office so [she] could obtain his fingerprints. However, Obataiye refused to be escorted to the office so a Sargent accompanied [her] to Obataiye's cell door. When Obataiye asked [Defendant Murphy] why [Defendant Murphy] needed his fingerprints, [Defendant Murphy] advised him that [Defendant Murphy] did not wish to speak with him about his personal matters on the pod where other inmates could overhear. [Defendant Murphy] then placed the Virginia State Police Form SP-236 against Obataiye's window for him to read, rather than indicate the contents out loud. Obataiye began yelling and cursing at [Defendant Murphy], claiming that he did not rape a minor and that it was his girlfriend. [Defendant Murphy] told Obataiye that [Defendant Murphy] would pass on his statement to the facility's Records Department. This is the only occasion [Defendant Murphy can] recall . . . asking Obataiye to provide fingerprints for any reason.

(Murphy Aff. ¶ 6.) On March 3, 2017, VDOC personnel sent the SP-236 Form back to the Virginia State Police without Obataiye's fingerprints because Obataiye repeatedly refused to provide them. (ECF No. 58-1, at 3.)

Obataiye provides a different account of his encounter with Defendant Murphy. According to Obataiye, Defendant Murphy "stated that if they can't get him for trying to have them kill[ed] (CO's), then she would make sure that his hommies [sic] get him because she knew that Bloods can't be rapist[s] or sex offenders." (Obataiye Decl. ¶ 67.) Defendant Murphy then began "screaming on the tier calling [Obataiye] a rapist, saying he raped a 12-year old little girl, when [Obataiye] refused to be finger printed for the sex offender registry." (*Id.*)[4]

On March 5, 2017, Obataiye wrote a letter a letter to the Virginia State Police, in which he stated:

> On 3-3-17, the Intel Officer here at the Red Onion, named Murphy came to the cell door to fingerprint me to get me to sign forms on a sex offender sheet. I explained to her that I am not a sex offender, that I am not incarcerated for anything sexual. She said, "the Va. State Police sent me here, they say something about you raped a 12-year old girl."
> . . . .
> I only had one sex offense my entire life which was 1996 when I was 13 years old. The girl was 12. It was consensual sex. . . . The judge said that the only reason I received the  [was] because "a minor cannot give consent to have sex legally in the Commonwealth of Va.". . . This is a violation of my rights just to bring up my criminal record as a minor. . . .

(ECF No. 58-1, at 9–10.) By letter dated April 24, 2017, the Virginia States Police informed Obataiye that his juvenile conviction for aggravated sexual battery did not require him to register as a sex offender. (*Id.* at 12.)

---

[4] Defendant Murphy swears that, "[a]t no time have I ever yelled loudly that Obataiye had raped a 12-year old girl in front of other inmates, nor did I ever call him a sex offender or rapist in front of other inmates. . . . I have never threatened Obataiye, directly or indirectly in any manner." (Murphy Aff. ¶ 7.)

7

### C. The Reference to Obataiye as a Sex Offender in VDOC Records

The VDOC maintains an electronic case management system called VACORIS. (Brace Aff. ¶ 4.) VACORIS generates a document called an Offender Face Sheet that contains the inmate's description, summarizes the inmate's offenses and contains "alerts," for *inter alia*, the inmate's violence risk and whether the inmate is a sex offender. (*Id.*; see ECF No. 64-3, at 6–7.) Obataiye's Offender Face Sheet contained "alerts" to "Supervise as Sex Offender" and "Sex Offender Registration Required," with a start date of "03/06/2017." (*See* ECF No. 64-3, at 7.) Defendant Rosch explains that, in March of 2017, "VACORIS would have shown active sex offender alerts [for Obataiye] because VDOC did not receive the Virginia State Police's determination of his registry requirements until January of 2018." (Rosch Aff. ¶ 13.)

Defendant Murphy swears she does not have the authority to list Obataiye as a sex offender in any VDOC records and never directed any VDOC personnel to list Obataiye as a sex offender in any VDOC record. (Murphy Aff. ¶ 8.)

### D. The Application to Transfer Obataiye to Oregon

In June of 2017, the VDOC's Special Investigations Unit recommended Obataiye for an Administrative Interstate Compact Transfer out of state to complete the remainder of his sentence. (Brace Aff. ¶ 4.)

> This recommendation was due to Obataiye's ongoing threats against VDOC staff, disruptive behavior, and lack of progress and improvement. Obataiye had a history of multiple serious disciplinary offenses. Obataiye was found to be a central figure in a conspiracy to harm VDOC staff at three separate institutions by placing broken glass in staff food via kitchen workers and Obataiye had begun sending threatening letters to [the] Director of VDOC.

(Rosch Aff. ¶ 10.) Defendant Brace served as Obataiye's institutional counselor in June of 2017. (Brace Aff. ¶ 4.) The recommendation to transfer Obataiye was approved on June 8, 2017. (*Id.*) As Obataiye's counselor, Defendant Brace "completed a Summary Information Sheet to be

8

included as part of his Interstate Compact Transfer Application." (*Id.*) Defendant Brace utilized Obataiye's Offender Face Sheet to complete the Summary Information Sheet. (*Id.*) At the time Defendant Brace "completed the Summary Information Sheet on June 12, 2017, VDOC had not received the disposition of the Virginia State Police's investigation as whether Obataiye was required to register as a sex offender." (*Id.* ¶ 5.) Accordingly, Defendant Brace used the information on Obataiye's Offender Face Sheet and marked on the Summary Information Sheet that Obataiye was not registered as a sex offender, but was a sex offender. (*Id.* ¶ 4; *see* ECF No. 64–3, at 5.)[5]

Defendant Brace swears that, "[a]t no time did Intel Officer Murphy or any other VDOC staff member suggest to me that I should designate Obataiye as a sex offender in his Interstate Compact Transfer Application." (Brace Aff. ¶ 6.)

---

[5] Obataiye swears that he

> spoke to Defendant Brace about my sex offense as a juvenile and even showed her a letter from the Va. State Police saying that I am [not] required to register as a sex offender *see exhibit C, letter from Va. State Police* I just received the Va. State Police letter back in April/2017 because I wrote them when Defendant Murphy called me a rapist. Defendant Brace knew all of this.

(Obataiye Decl. ¶ 29.) As explained below, Obataiye's assertion that, in 2017, Defendant Brace knew Obataiye was not a sex offender because he showed her a letter from the Virginia State Police reflecting that fact is contradicted by the record.

As reflected above, the sex offender alert in the VDOC files was generated not by Obataiye's juvenile offense of aggravated sexual battery, but by his adult offense for abduction for pecuniary benefit. On April 24, 2017, in response to a letter from Obataiye, the Virginia State Police sent Obataiye a letter informing him that his juvenile aggravated sex battery conviction did not require him to register as a sex offender. (ECF No. 58-1, at 12.) It was not until January 31, 2018, that the Virginia State Police determined that Obataiye's offense of abduction for pecuniary benefit did not require him to register as a sex offender. (*Id.* at 13.)

Indeed, the letter from the Virginia State Police that Obataiye swears that he showed Defendant Brace in 2017, is dated November 21, 2018, and came in response to his letter of November 4, 2018. (ECF No. 62-3, at 1.)

9

### E. Alleged Consequences of References to Obataiye as a Sex Offender

On November 7, 2017, Obataiye was transferred to Oregon. (Rosch Aff. ¶ 11.) According to Obataiye, during his transfer, all the different jails he stayed at asked him about being a sex offender. (Obataiye Decl. ¶ 33.) Obataiye avers, "I always said that I was not and they would show me the paperwork that said: sex offender, violent sex offender." (*Id.*) Obataiye further notes:

> I had to assault my sex offender cellmate in VA jail. [I] fought with the guards in Oklahoma with riot gear, etc, restrained in Nevada, tried to spit in guards face in [Oregon Department of Corrections ("ODOC")], then had to assault 8 guards in ODOC after they called me a rapist. I put one in a coma and hospitalized all other guards. I have been in segregation nearly (2) years because of this. And it's all because of VDOC placed sex offender in [my] file and Va. State Police.

(*Id.* ¶ 35.) Obataiye further notes that he was "pulled off the yard in Oregon every 30 days in front of all the prisoners to be assess by PREA, which is ODOC's policy if you are a sex offender." (*Id.* ¶ 34.)

According to Defendant Rosch, "[n]othing in the documentation sent to the Oregon Department of Corrections by VDOC stated that Obataiye was a 'rapist,' was a 'violent sex offender,' or was registered as a sex offender or had been determined to be required to register as a sex offender." (Rosch Aff. ¶ 12.) "Obataiye was never designated as sex offender in the records of the Oregon Department of Corrections." (*Id.* ¶ 14.)

### F. State Police Inform the VDOC that Obataiye Did Not Need to Register as a Sex Offender

By letter dated January 31, 2018, the Virginia State Police informed the Sex Offender Registry Manager at the VDOC, that it had determined that Obataiye's adult conviction for abduction for pecuniary benefit and his juvenile conviction for aggravated sexual battery did not require Obataiye to register as a sex offender. (ECF No. 58-1, at 13.) Obataiye's VDOC record

10

on VACORIS "was updated in January 2018 to reflect that sex offender registration was not required per the Virginia State Police's determination." (Rosch Aff. ¶ 7.) There are currently "no alerts in Obataiye's VACORIS record indicating [Obataiye] was a sex offender, and nowhere in VDOC records [is] he currently shown as a sex offender." (*Id.* ¶ 13.)

On November 4, 2018, Obataiye wrote the Virginia State Police to ensure that he was not labeled as a sex offender. (ECF No. 58–1, at 14–17.) By letter dated November 21, 2018, the Virginia State Police informed Obataiye that he was not on the registry and was under no obligation to register as a sex offender. (*Id.* at 18.)

"Obataiye is not and has never been registered as a sex offender on Virginia's 'Sex Offender and Crimes Against Minors Registry.'" (Patterson Aff. ¶ 4.)

### III. ANALYSIS

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

#### A. Claims Against Virginia State Police and Defendant Flaherty

Obataiye contends that the Virginia State Police and Defendant Flaherty wrongly had him listed in the Virginia Sex Offender Registry for 12 years. (Compl. 8.) Obataiye contends that these Defendants failed to fix things in their system even after he sent them letters. (*Id.* at 9.) Obataiye contends that such action amounted to: "deliberate indifference, equal protection, discrimination, cruel and unusual punishment, due process, negligence." (*Id.* at 8.) Because Obataiye was never on the Sex Offender Registry, his claims lack factual merit. Moreover, Obataiye utterly fails to demonstrate these Defendants violated his constitutional rights or acted

negligently. Accordingly, all claims against Virginia State Police and Defendant Flaherty will be DISMISSED WITH PREJUDICE. The Motion for Summary Judgment (ECF No. 57) filed by the Virginia State Police and Defendant Flaherty will be GRANTED.

### B.     Claims Against the Correctional Defendants

In analyzing Obataiye's claims against the Correctional Defendants, it is best to start with the only two Correctional Defendants who actually referred to Obataiye as a sex offender, Defendants Murphy and Brace.

#### 1.     Eighth Amendment

To survive a motion for summary judgment on an Eighth Amendment "cruel and unusual punishment" claim, Obataiye "must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). An inmate must demonstrate both that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson*, 501 U.S. at 298–300). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

To satisfy the objective element of an Eighth Amendment claim, the deprivation complained of must be extreme and amount to more than the "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (some internal quotation marks omitted) (quoting *Hudson*, 503 U.S. at 9). "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Id.* at 1381. Furthermore, verbal abuse alone does not give rise to an Eighth Amendment claim. *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question

13

subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

### a.     Defendant Murphy

For purposes of the Motion for Summary Judgment, the Court must assume the truth of Obataiye's version of his encounter with Defendant Murphy on March 3, 2017. Specifically, the Court must assume that Defendant Murphy "stated that if they can't get [Obataiye] for trying to have them kill[ed] (CO's), then she would make sure that his hommies [sic] get him because she knew that Bloods can't be rapist[s] or sex offenders." (Obataiye Decl. ¶ 67.) Defendant Murphy then began "screaming on the tier calling [Obataiye] a rapist, saying he raped a 12-year old little girl, when [Obataiye] refused to be finger printed for the sex offender registry." (*Id.*)

Courts have recognized "that the sex offender label is stigmatizing in the prison context, and that prison norms may call for the assault of sex offenders." *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020) (citing *Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010)). Nevertheless, Obataiye fails to produce evidence that any inmate at ROSP ever mentioned Defendant Murphy's comments, much less threatened him based on the comments. The lack of evidence on this score may be attributable to the fact that Obataiye is six feet and nine inches tall, weighs more than 250 pounds, and is extremely violent. (ECF No. 64-1, 33, 35.) Nor is there anything in the record to suggest that once Obataiye was transferred from ROSP, Defendant Murphy's words had any impact whatsoever on his safety. In short, Obataiye fails to demonstrate that as a result of Defendant Murphy's words he sustained "a serious or significant physical or emotional injury." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (citation omitted).

Accordingly, Obataiye's Eighth Amendment claim against Defendant Murphy will be DISMISSED.

### b. Defendant Brace and the Remaining Correctional Defendants

In the paperwork for Obataiye's interstate transfer, Defendant Brace marked that Obataiye was a sex offender because the VACORIS system contained a sex offender alert for Obataiye pending verification from the Virginia State Police regarding whether Obataiye's offense of abduction of a minor for pecuniary benefit qualified as a sex offense. Once again, Obataiye fails to demonstrate that he sustained a serious or significant physical or emotional injury because of Defendant Brace's reference to Obataiye as a sex offender. *Id.* Rather, according to Obataiye, he assaulted his cellmate because his cellmate was a sex offender. (Obataiye Decl. ¶ 35.)

Moreover, Obataiye fails to demonstrate that Defendant Brace acted with a sufficiently culpable state of mind by including the reference to Obataiye as a sex offender in his Summary Information Sheet for this interstate transfer. There is no evidence that Defendant Brace knew or should have known prison officials would share this reference with other prisoners. Furthermore, the record reflects that Obataiye was not designated a sex offender in the ODOC. In short, Obataiye fails to demonstrate that Defendant Brace acted with deliberate indifference to a substantial risk to Obataiye's safety. Accordingly, Obataiye's Eighth Amendment claim against Defendant Brace will be DISMISSED.

Obataiye's Eighth Amendment claims against the remaining Correctional Defendants are even more attenuated. There is no evidence in the record that Defendants Clarke, Dawkins, Fannin, or Robinson labeled or referred to Obataiye as a sex offender or acted with deliberate indifference to Obataiye during the period where this notation appeared in VACORIS.

Accordingly, Obataiye's Eighth Amendment claims against the remaining Correctional Defendants will be DISMISSED.

### 2. Retaliation

Obataiye contends that the Correctional Defendants labeled him a sex offender in retaliation for his conspiring to kill various correctional officials. In order to survive summary judgment for his First Amendment retaliation claim, Obataiye must produce evidence that demonstrates that: "(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. V. McCraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Conspiring to kill prison officials is not a protected First Amendment activity. Accordingly, Obataiye's retaliation claims will be DISMISSED.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To survive summary judgment, Obataiye must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual [evidence] that establish[es] improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). If a plaintiff satisfies the above, "the court proceeds to determine

16

whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)). Obataiye fails to identify a comparator inmate to whom he is similarly situated and was treated differently. Accordingly, Obataiye's Equal Protection claims will be DISMISSED.

### 4. Due Process

The Due Process Clause is violated when government action deprives an individual of a protected liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005).

Courts have recognized that individuals have a liberty interest in avoiding being formally labelled as a sex offender. *See Renchenski*, 622 F.3d at 328 (citations omitted) (internal quotation marks omitted) (observing that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions"); *Meredith v. Stein*, 355 F. Supp. 3d 355, 365 (E.D.N.C. 2018) ("United States citizens have a protectable right not to be placed on the sex offender registry—not to have their legal status changed so abruptly and severely—without sufficient process."). "On the other hand, not every sex-offense-related label or reference by the state gives rise to a protected interest." *Fletcher v. Idaho Dep't of Corr.*, No. 1:18–CV–00267–BLW, 2020 WL 7082690, at *7 (D. Idaho Dec. 3,

2020). "[A]n informal assignment of a sex offender label for purposes of determining an individual's amenability to treatment or risk of dangerousness does not implicate a liberty interest." *Id.* (citing *Vega v. Lantz*, 596 F.3d 77, 83–84 (2d Cir. 2010)). Here, the temporary sex offender alert for Obataiye in VACORIS and the single reference to Obataiye as a sex offender in the Summary Information Sheet that accompanied his interstate transfer fail to give rise to a protected liberty interest. *See id.* Accordingly, Obataiye's due process claims against the Correctional Defendants will be DISMISSED.

### 5. State Law Claims

Given the preliminary dismissal of the federal constitutional claims, Obataiye's state law claims will be DISMISSED WITHOUT PREJUDICE.

### IV. CONCLUSION

The Motions for Summary Judgment (ECF Nos. 57, 63) will be GRANTED. All claims against Virginia State Police and Defendant Flaherty will be DISMISSED WITH PREJUDICE. Obataiye's constitutional claims against the Correctional Defendants will be DISMISSED WITH PREJUDICE. Obataiye's state law claims against the Correctional Defendants will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED.

An appropriate Final Order shall accompany this Memorandum Opinion.

Date: 2) April 2021
Richmond, Virginia

/s/ John A. Gibney, Jr.
United States District Judge